# Pennsylvania Higher Education Assistance Agency v. Reid

*Wilbur S. Metcalf,* for plaintiff.
*Sondra T. Berman,* for defendant.

DOWLING, *J.,* October 6, 1980—Everline Reid, having received the benefits of an interest free loan to further her education, now wishes to acquaint her benefactor with the result of higher learning by responding to a demand for repayment with an assertion that the statute of limitations bars any recovery action.

She obtained loans totaling $5,000 over a four year period from the Philadelphia Savings Fund Society which were guaranteed by plaintiff under authority of the Pennsylvania Higher Education Assistance Act of August 7, 1963, P.L. 549, sec. 1 et seq., 24 P.S. §5101 et seq. In accordance with the terms of the promissory notes she agreed to commence repayment nine months after leaving school. She left on December 21, 1972 but failed to establish a repayment schedule and on December 31, 1973 plaintiff, in accordance with the guaranty, paid the full amount of the loans to the Philadelphia

Savings Fund Society and received an assignment. Subsequent attempts by PHEAA to obtain payment fell on deaf ears and the present action was commenced January 4, 1980.

In her answer to the complaint defendant admitted the substance of the allegation made, i.e., that she received money, agreed to repay it and has failed to do so, but raised the affirmative defense that plaintiff's action was barred by the six year statute of limitations. The issue comes before us on defendant's motion for judgment on the pleadings, plaintiff having replied by asserting that it is a part of the Commonwealth and the statute does not run against it.

Defendant bases her argument on the position that PHEAA is not an integral part of the Commonwealth and hence does not share the attributes of sovereign immunity. She might have asserted that since the decision of Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A. 2d 709 (1978), which struck down the judicial doctrine of sovereign immunity that the King has been stripped of all his prerogatives including avoidance of the statute of limitations. However, that point has not been made and there is no reason why this court should be solicitous to aid academic freeloaders in avoidance of their debts. We also note that our Supreme Court in a recent decision, Com. v. Bethlehem Steel, 486 Pa. 186, 404 A. 2d 692, 693 (1979), refused to discuss this issue because it was not properly before them.

The argument that defendant does present is based principally on Specter v. Com., 462 Pa. 474, 341 A. 2d 481 (1975), which held that the Pennsylvania Turnpike Commission is not a part of the Commonwealth and thus could not invoke immun-

ity from suit. In reaching this decision the Supreme Court examined certain characteristics of the Commission which the court felt established its independence from the Commonwealth and its attributes of sovereignty. Central to the court's ruling was the Turnpike's financial independence and defendant argues that PHEAA is in a similar situation since the act creating the agency, 24 P.S. §5104(3), gives the directors' the power:

"To take, hold and administer on behalf of the agency and for any of its purposes, real property, personal property and moneys or any interest herein and the income therefrom either absolutely or in trust. The board may acquire property or moneys for such purpose by purchase or lease and by the acceptance of gifts, grants, bequests, devises or loans, but no obligation of the agency shall be a debt of the State and it shall have no power to pledge the credit or taxing power of the State nor to make its debts payable out of any moneys except those of the corporation."

Defendant contends that this language was intended by the legislature to completely sever PHEAA from the control of the Commonwealth, thereby establishing an autonomous corporation which is unable to invoke the immunity privileges of the state.

The question of whether or not PHEAA is an agency of the Commonwealth was decided in Richmond v. Pennsylvania Higher Education Assistance Agency, 6 Pa. Commonwealth Ct. 612, 614, 297 A. 2d 544 (1972), where the court held that it has original jurisdiction in cases against the Commonwealth and that the statute defining Commonwealth included: "'departments, de-

partmental administrative boards and ·commissions, officers, independent boards or commissions, authorities and other agencies of this Commonwealth. . . .' *PHEAA is such an agency.*" (Emphasis supplied.) ·

But while the court in Richmond definitively ruled that PHEAA is a part of the Commonwealth it did not examine its definitive characteristics. However, in Greenfield v. Pennsylvania Insurance Guaranty Association, 24 Pa. Commonwealth Ct. 127, 353 A. 2d 918 (1976), it again had occasion to examine an agency whose status as a part of the Commonwealth was being challenged. In Greenfield, the court held that the Pennsylvania Insurance Guaranty Association was not a part of the Commonwealth and at pp. 130-131 supported its position by citing the Richmond case and comparing its status to that of PHEAA which the court again said was a part of the Commonwealth.

"In Richmond v. Pennsylvania Higher Education Assistance Agency, 6 Pa. Commonwealth Ct. 612, 297 A. 2d 544 (1972), we held that the Pennsylvania Higher Education Assistance Agency was an agency of the Commonwealth. The Act of August·7, 1963, P.L. 549, as amended, 24 P.S. §5101 et seq., reveals that PHEAA is denominated a government instrumentality; that the members of the board of directors are appointed by the Governor, the President Pro Tempore of the Senate or Speaker of the House, that on dissolution its assets become the property of the State; *and that at least part of its operating expenses is provided by a yearly appropriation by the General Assembly—none of which indices of State agency exist with respect to the Pennsylvania Insurance Guaranty Association.*" (Emphasis supplied.)

In Kennedy v. Delaware River Joint Toll Bridge Commission, 23 Pa. Commonwealth Ct. 662, 668, 354 A. 2d 52 (1976), another decision which is relevant to PHEAA's status, the court distinguished the Specter case stating that: "the Specter decision rested upon the financial independence of the Turnpike Commission which allowed the Supreme Court to conclude 'that the Commission is separate and apart from the Commonwealth and therefore may be treated differently.'" The court then went on to hold Specter was "inapposite" to its discussion since Specter applied only to agencies which were financially *independent* of the state, not ones which were financially *dependent* on the state like the Delaware River Joint Toll Bridge Commission and PHEAA.

Several other factors denote a relationship between PHEAA and the Commonwealth. Section 7 of the enabling act, 24 P.S. §5107, specifically exempts all property, income and activities of PHEAA from all taxes and assessments. Section 9 of the act, 24 P.S. §5109, provides that upon dissolution, all the property and moneys of the corporation shall become property of the Commonwealth.

To assert that PHEAA does not perform a governmental function and that PHEAA's status in cases involving default on a student loan is merely that of an assignee is to ignore the whole reason for PHEAA's existence. PHEAA operates in the public interest by making education possible for those who would not otherwise have the financial capacity to obtain an education. By isolating certain factors related to PHEAA's statutory basis or its mode of operation, an argument can be made that PHEAA does not seem to be a Commonwealth agency. However, by looking at the entire statutory scheme which created PHEAA and at the sole reason for its

existence, the conclusion is inescapable that PHEAA is an agency of the Commonwealth.

It is in the public interest that PHEAA be permitted to maintain its efforts to collect on student loans. The money paid out by PHEAA is tax money, and all taxpayers suffer when a student defaults on his loan. The student loan program will not remain viable if every effort at collection is not pursued. It is in the interest of all future students that the program remain in operation in order to permit as many as possible to obtain a higher education. As has been said, an ungrateful person does an injury to all who stand in need of aid.

Given the clear direction from the Commonwealth Court on this issue, this court has no hesitancy in concluding that PHEAA is an agency of the Commonwealth. Therefore in performing its legislated purpose of guaranteeing student loans and collecting on defaulted loans, it follows that PHEAA is entitled to the historic privilege of the Commonwealth regarding the statute of limitations.

Accordingly, we enter the following

## ORDER

And now, October 6, 1980, defendant's motion for judgment on the pleadings is dismissed.